IN THE DISTRICT COURT OF SEMINOLE COUNTY
STATE OF OKLAHOMA

SEMINOLE COUNTY, OKLAHOMA
FILED
IN DISTRICT COURT

JUL 0 2 2019

KIM A. DAVIS, COURT CLERK
BY_____ DEPUTY

(1) THOMAS JAMES SLOANE, individually )
and as Administrator of the Estate of )
COLT RIVER LEVI CLARK, formerly )
known as COLTON LEVI CLARK, )
deceased, )
)
              Plaintiff, )
)
vs. )
)
(1) THE OKLAHOMA DEPARTMENT )
OF HUMAN SERVICES; )
(2) HOWARD HENDRICK, FORMER )
DIRECTOR OF THE OKLAHOMA )
DEPARTMENT OF HUMAN SERVICES, )
in his individual capacity; )
(3) JUSTIN BROWN, DIRECTOR OF THE )
OKLAHOMA DEPARTMENT OF HUMAN )
SERVICES, in his official capacity; )
(4) MENDY D. THOMAS, in her individual )
capacity; )
(5) EILEEN FILER-WHITSON, a.k.a. )
EILEEN WHITSON, in her individual )
capacity; )
(6) ANGELA SHANDY, in her individual )
capacity; )
(7) JEANIE L. SOLES, in her individual )
capacity; )
(8) AMY SELF, in her individual capacity; )
(9) JEFFREY HODGE, in his individual )
capacity; )
(10) LARRY CHESSER, in his individual )
capacity; )
(11) LADONNA AIMS, in her individual )
capacity; )
(12) JAN BYNUM, in her individual )
capacity; )
(13) SUSIE DANIELS, in her individual )
capacity; )
(14) CHRISTINA D. EVANS, in her )
individual capacity; )
(15) BARBARA STEINER, in her individual )
capacity; )

CJ-2019- 54

**EXHIBIT 2**

| | |
|---|---|
| (16) DIANE POWERS, in her individual capacity; | ) )|
| (17) JEANEE RUTLEDGE, in her individual capacity; | ) )|
| (18) NANCY SLUSAR, in her individual capacity; | ) )|
| (19) M. SMITH, in his or her individual capacity; | ) )|
| (20) KELLY MULLEN a.k.a KELLIE MULLEN, in her individual capacity; | ) )|
| (21) SUSIE HARGE, in her individual capacity; | ) )|
| (22) CHERYL BURTON, in her individual capacity; | ) )|
| (23) L. NASH, in his or her individual capacity; | ) )|
| (24) JANIS MCELROY, in her individual capacity; | ) )|
| (25) CARLA PRESLEY, in her individual capacity; | ) )|
| (26) JANET WALKER, in her individual capacity; | ) )|
| (27) SHADOW MOUNTAIN BEHAVIORAL HEALTH SYSTEM, LLC; | ) )|
| (28) HOLLY JERMAN-WALLACE a.k.a. HOLLY WALLACE, in her individual capacity; | ) ) )|
| (29) TERESA GREENE, in her individual capacity; | ) )|
| (30) UNKNOWN DHS SUPERVISOR 1 in his or her individual capacity; | ) )|
| (31) UNKNOWN DHS CASE WORKER 1 in his or her individual capacity; and | ) ) )|
| (32) UNKNOWN DHS CASE WORKER 2 in his or her individual capacity, | ) ) )|
| Defendants. | ) |

## PETITION

Plaintiff Thomas James Sloane, on behalf of himself and as Administrator of the Estate of Colt River Levi Clark, formerly known as Colton Levi Clark, deceased, brings the following claims against the above-named Defendants:

**EXHIBIT 2**

## Introduction

Plaintiff Thomas James Sloane, then-named Austin Clark, and his brother Colton Clark (collectively referred to as the "Clark boys") had a long history of being abused by their biological parents. After one reunification, they were again removed from the custody of their father by DHS in the fall of 2003. On October 31, 2003, DHS placed the Clark boys, then ages 9 and 7 respectively, with their paternal uncle and his wife James Rex Clark and Rebecca Faith Clark ("Rex" and "Becky").[1] At the time, DHS knew, or with reasonable investigation should have known, that Rex in particular had a history of sexual and physical assault allegations against him and suffered from mental illness that was not well managed, making him an unfit custodian. The biological parents' rights were eventually terminated and Rex and Becky adopted the Clark boys. After the adoption was complete, additional referrals were received by DHS concerning the welfare of the Clark boys and alleging that the children's welfare was at risk. DHS should have but did not intervene and remove the children to safety. Instead the Clark boys suffered regular physical and verbal abuse until ultimately Colton was beaten to death by Rex and Becky. An elaborate cover story was invented, and Homer was forced to repeat the story that his brother had run away under threat of further abuse until he eventually decided to protect himself by running away and turning himself in to the Sheriff.

## Parties, Jurisdiction and Venue

1.  Plaintiff Thomas James Sloane, formerly known as Homer Justice Levi Clark and Austin Levi Clark ("Sloane", "Homer", or "Austin" throughout), is a resident of Pottawatomie County, Oklahoma. Mr. Sloane brings this action in his individual capacity and in his capacity as Administrator of the Estate of Colt River Levi Clark ("Colt" or "Colton" throughout), formerly

---

[1] Plaintiff's claims against Rex and Becky Clark were previously brought in Seminole County District Court, Case No. CJ-2017-113.

**EXHIBIT 2**

known as Colton Levi Clark, deceased. The estate is filed in Seminole County District Court Case No. PB-2017-99.

2. Defendant Oklahoma Department of Human Services ("DHS") is a state agency of the State of Oklahoma responsible for child welfare and foster care services.

3. Defendant Howard Hendrick ("Hendrick") was at all times relevant the Director of DHS and on information and belief is a resident of the State of Oklahoma. Plaintiff is suing Hendrick in his individual capacity acting under color of state law. Hendrick was responsible for adopting and implementing policies that protect the safety and welfare of children in DHS's custody.

4. Defendant Justin Brown ("Brown") is the current Director of DHS and is a resident of the State of Oklahoma. Brown is presently charged with overseeing all operations of DHS.

5. Defendant Mendy D. Thomas ("M. Thomas") was at all times relevant an employee of DHS. M. Thomas was a DHS case worker responsible for monitoring and supervising DHS's placement of the Clark boys with a foster parent, as described below.

6. Defendant Eileen Filer-Whitson a.k.a Eileen Whitson ("Whitson") was at all times relevant an employee of DHS. Whitson was a DHS supervisor responsible for supervising DHS's placement of the Clark boys with a foster parent and developing a permanent placement plan, as described below.

7. Defendant Angela Shandy ("Shandy") was at all times relevant an employee of DHS. Shandy was a DHS case worker responsible for monitoring and supervising DHS's placement of the Clark boys with a foster parent, as described below.

**EXHIBIT 2**

8. Defendant Jeanie L. Soles ("Soles") was at all times relevant an employee of DHS. Soles was a DHS case worker responsible for monitoring and supervising DHS's placement of the Clark boys with a foster parent, as described below.

9. Defendant Amy Self ("Self") was at all times relevant an employee of DHS. Self was a DHS case worker/investigator responsible for monitoring and supervising DHS's placement of the Clark boys with a foster parent, as described below.

10. Defendant Jeffrey Hodge ("Hodge") was at all times relevant an employee of DHS. Hodge was a DHS case worker/investigator responsible for monitoring and supervising DHS's placement of the Clark boys with a foster parent, as described below.

11. Defendant Larry Chesser ("Chesser") was at all times relevant an employee of DHS. Chesser was a DHS case worker/investigator responsible for monitoring and supervising DHS's placement of the Clark boys with a foster parent, as described below.

12. Defendant Ladonna Aims ("Aims") was at all times relevant an employee of DHS. Aims was a DHS supervisor responsible for supervising DHS's placement of the Clark boys with a foster parent and developing a permanent placement plan, as described below.

13. Defendant Jan Bynum ("Bynum") was at all times relevant an employee of DHS. Bynum was an Assistant County Director for DHS responsible for overseeing DHS's placement of the Clark boys and development of a permanent placement plan, as described below.

14. Defendant Susie Daniels ("Daniels") was at all times relevant an employee of DHS. Daniels was a DHS case worker responsible for monitoring and supervising DHS's placement of the Clark boys with a foster parent, as described below.

**EXHIBIT 2**

15. Defendant Christina D. Evans ("Evans") was at all times relevant an employee of DHS. Evans was a DHS case worker responsible for monitoring and supervising DHS's placement of the Clark boys with a foster parent, as described below.

16. Defendant Barbara Steiner ("Steiner") was at all times relevant an employee of DHS. Steiner was a DHS adoption specialist responsible for overseeing and supervising DHS's adoptive placement and consent for the Clark boys, as described below.

17. Defendant Diane Powers ("Powers") was at all times relevant an employee of DHS. Powers was a DHS adoption supervisor responsible for overseeing and supervising DHS's adoptive placement and consent for the Clark boys, as described below.

18. Defendant Jeanee Rutledge ("Rutledge") was at all times relevant an employee of DHS. Rutledge was a DHS adoption specialist responsible for overseeing and supervising DHS's adoptive placement and consent for the Clark boys, as described below.

19. Defendant Nancy Slusar ("Slusar") was at all times relevant an employee of DHS. Slusar was a DHS employee responsible for receiving referrals concerning the Clark boys and ensuring follow up investigation, as described below.

20. Defendant M. Smith was at all times relevant an employee of DHS. M. Smith was a DHS supervisor responsible for overseeing referrals and investigations concerning the Clark boys, as described below.

21. Defendant Kelly Mullen a.k.a. Kellie Mullen ("Mullen") was at all times relevant an employee of DHS. Mullen was a DHS supervisor responsible for overseeing referrals and investigations concerning the Clark boys and determining whether to seek removal, as described below.

**EXHIBIT 2**

22. Defendant Susie Harge ("Harge") was at all times relevant a DHS employee. Harge was a DHS worker/investigator responsible for investigating referrals and determining whether to remove children, as described below.

23. Defendant Cheryl Burton ("Burton") was at all times relevant an employee of DHS. Burton was a DHS employee responsible for receiving referrals concerning the Clark boys and ensuring follow up investigation, as described below.

24. Defendant L. Nash was at all times relevant an employee of DHS. L. Nash was a DHS supervisor responsible for overseeing referrals and investigations concerning the Clark boys, as described below.

25. Defendant Janis McElroy ("McElroy") was at all times relevant an employee of DHS. McElroy was a DHS County Director responsible for overseeing DHS's placement of the Clark boys and development of a permanent placement plan, as described below.

26. Defendant Carla Presley ("Presley") was at all times relevant an employee of DHS. Presley was a DHS case worker/investigator responsible for receiving referrals concerning the Clark boys and ensuring follow up investigation, as described below.

27. Defendant Janet Walker ("Walker") was at all times relevant an employee of DHS. Walker was a DHS case worker responsible for receiving referrals concerning the Clark boys and ensuring follow up investigation, as described below.

28. Defendant Shadow Mountain Behavioral Health System ("Shadow Mountain BHS") is a Delaware limited liability company doing business in Oklahoma and was subcontracted by DHS to assist in completing the adoption process, as described below.

29. Defendant Holly Jerman-Wallace a.k.a. Holly Wallace ("Wallace") was at all times relevant an employee of Shadow Mountain BHS. Wallace was responsible for assisting in

**EXHIBIT 2**

completing the adoption process, as described below. On information and belief, Wallace is a resident of Oklahoma county.

30. Defendant Teresa Greene ("Greene") was at all times relevant an employee of Shadow Mountain BHS. Greene was responsible for assisting in completing the adoption process, as described below. On information and belief, Greene is a resident of Oklahoma county.

31. Unknown DHS Supervisor 1 was at all times relevant an employee of DHS. Unknown DHS Supervisor 1 was a DHS supervisor responsible for supervising DHS's placement of the Clark boys with a foster parent and developing a permanent placement plan, as described below.

32. Unknown DHS Case Worker 1 was at all times relevant an employee of DHS. Unknown DHS Case Worker 1 was a DHS case worker responsible for receiving referrals concerning the Clark boys and ensuring follow up investigation, as described below.

33. Unknown DHS Case Worker 2 was at all times relevant an employee of DHS. Unknown DHS Case Worker 2 was a DHS case worker responsible for receiving referrals concerning the Clark boys and ensuring follow up investigation, as described below.

34. Defendants Hendrick, Thomas, Whitson, Shandy, Soles, Self, Hodge, Chesser, Aims, Bynum, Daniels, Evans, Steiner, Powers, Rutledge, Slusar, M. Smith, Mullen, Harge, Burton, L. Nash, McElroy, Presley, and Walker along with Defendants Unknown DHS Supervisor 1 and Unknown DHS Case Worker 1 and 2 are collectively referred to herein as "DHS Employees". The DHS Employees are being sued in their individual capacities acting under color of state law. Upon information and belief, the DHS Employees are residents of Oklahoma.

35. This Court has jurisdiction over this matter and venue is proper in this Court.

**Facts Common to All Claims**

**EXHIBIT 2**

36. Plaintiff Thomas James Sloane was born Austin Levi Clark on January 23, 1994, to Monty Clark and Terrie Clark.

37. Colt River Levi Clark was born Colton Levi Clark on May 24, 1996, to Monty Clark and Terrie Clark.

38. After a series of prior child welfare history, the Clark boys were removed from their biological parent's physical custody by DHS Employees a final time on October 21, 2003.[2]

39. After a brief stay in a shelter and another brief stay with their paternal aunt Cheryl Burke ("Cheryl"), a previous foster placement, DHS Employees placed the Clark boys in the home of their paternal uncle and his wife James Rex Clark ("Rex") and Rebecca Faith Clark ("Becky") on October 31, 2003.

40. At or around the time of placement, Cheryl informed DHS Employees of physical, sexual, and verbal abuse that had been perpetrated against her by Rex when they were growing up.

41. Later investigations would identify additional witnesses to this abuse by Rex.

42. At the time of placement, Rex also had a history of mental illness.

43. At or around the time of placement, Monty Clark and Terrie Clark both expressed concerns about the motivations for Rex and Becky desiring placement, including concerns that such placement was sought because it would increase the family income.

44. DHS Employees either ignored the reports they received at this time or did not perform a full and thorough investigation to discover whether Rex and Becky were fit to serve as foster parents.

45. At first, the Clark boys seemed to be doing well and appeared to be healthy and content in their new home.

---

[2] See Oklahoma County District Court Case No. JD-02-336.

**EXHIBIT 2**

46. While in the home of Rex and Becky, the Clark boys began disclosing information that indicated a history of sexual abuse while in their biological parents' custody.

47. These new disclosures prompted some new investigation by DHS Employees, but at this time they still ignored and/or failed to discover the past allegations concerning Rex.

48. DHS employees and Defendants Shadow Mountain BHS, Wallace, and Greene did further background checks and investigations concerning Rex and Becky after the Clark boys' biological parents' rights were terminated and Rex and Becky expressed a desire to adopt the Clark boys.

49. Rex and Becky eventually adopted the Clark boys in the fall of 2004 with the consent of DHS.

50. Healthcare providers for the Clark boys made additional referrals to DHS as more information concerning the sexual abuse disclosed by the Clark boys came to light in 2005.

51. At this time it was also disclosed to DHS Employees that Rex had handcuffed Colton to his bed on at least one occasion.

52. In late Spring and Summer of 2005 a criminal investigation was done by the Oklahoma County Sheriff's Office into the sexual abuse and during this investigation additional confirmation of the allegations of past abuse by Rex were made by his siblings Cheryl Burke and Monty Clark.

53. DHS Employees received this information from the Oklahoma County Sheriff's Office and yet did not adequately assess the safety of the children in light of these allegations.

54. At some point in 2005, Rex and Becky began to abuse the Clark boys, including physical abuse.

**EXHIBIT 2**

55. The physical abuse by Rex and Becky left Sloane with physical scars he still bears today.

56. Sometime in March 2006 the physical abuse against Colton culminated when Rex and Becky beat him so severely that he died.

57. On March 28, 2006, DHS Employees received an additional referral for the Clark boys, and despite not being able to locate Colton, failed to timely open an investigation and remove Sloane from the situation.

58. On April 17, 2006, Sloane was forced, under threat of further abuse and even death, to lie to DHS Employee Defendant Harge about the location of Colton.

59. On April 20, 2006, Sloane was again forced, under threat of further abuse and even death, to recite a rehearsed lie about Colton running away to DHS and law enforcement, a lie he would be forced to repeat many times thereafter, when it became apparent the DHS Employees would keep returning to the property until Colton was located.

60. DHS Employees failed to recognize the abusive and manipulative situation created by Rex and Becky and allowed Sloane to remain in the custody of his brother's murderers.

61. Sloane, then 12 years of age, eventually determined to take control of his situation and ran away in September of 2006.

62. After being missing for several days, Sloane was eventually picked up on a burglary complaint – Rex and Becky had never reported him missing.

63. Rex and Becky consented to the termination of their parental rights to Sloane a few months later.

64. Sloane went through various treatments and therapies and was again adopted, but this time by a non-relative.

**EXHIBIT 2**

65. Rex and Becky were eventually tried and each convicted on October 9, 2017, of four counts of felony child abuse by injury and one count of murder in the first degree – child abuse in Pontotoc County District Court Case Nos. CF-2017-459 and CF-2017-460.[3]

66. On October 16, 2017, Sloane filed a Petition seeking a decree of death and appointment as personal representative of Colton's estate in Seminole County District Court Case No. PB-2017-99.

67. In that same case, a Decree of Death was entered on December 12, 2017.

**Claims for Relief**

**COUNT I**
**42 U.S.C § 1983**

68. Pursuant to the Due Process Clause of the Fourteenth Amendment of the United States Constitution, the DHS Employees owed a constitutional duty to the Clark boys to take reasonable steps to protect them from harm and to not create a danger, nor increase their vulnerability to a danger that would result in harm to the Clark boys.

69. These duties were clearly established law before the events giving rise to this claim occurred.

70. Defendant Hendrick, as the Director of DHS during all times relevant to the Petition, had supervisory responsibility to ensure that DHS adopts and implements policies that protect children in DHS custody from unreasonable risk of harm. Hendrick, acting under color of state law, breached his constitutional duties to the Clark boys by:

   a. Failing to ensure that DHS adopted and implemented a written policy that requires: (i) DHS staff to fully investigate the history and background of any proposed foster or adoptive placement of a child in DHS custody, including obtaining information

---

[3] These cases are currently on appeal to the Court of Criminal Appeals, Case Nos. F-2017-1306 and F-2017-1307.

**EXHIBIT 2**

from all reasonably available family members familiar with of the proposed placement; (ii) DHS staff to fully investigate and revisit past placements when new information is learned; (iii) DHS staff to fully investigate circumstances surrounding the disappearance of a child from a home when that child's sibling still resides in the home; (iv) DHS staff to more thoroughly investigate a family placement when a parent of a child in custody objects or expresses concern about the motivations behind that family placement; and (v) that such investigations be fully documented in DHS's files; and

    b.    Permitting DHS staff to rely on unwritten custom and practice regarding placement of children in DHS custody instead of adopting a formal policy to memorialize that actual and expected policy.

71.    The other DHS Employees breached their constitutional duties owed to the Clark boys by:

    a.    Failing to fully investigate the background and history of Rex and Becky Clark, despite having been informed prior to or at the time of placement of Rex's abusive history and mental illness;

    b.    Failing to fully investigate the alternate motives for seeking placement and adoption of the Clark boys, including financial motives;

    c.    Placing and/or maintaining placement of the Clark boys with Rex and Becky despite knowing of Rex's abusive history and mental illness and/or despite having evidence of improper motives for seeking placement and adoption;

    d.    Failing to properly investigate the allegations of abuse by Rex when those allegations were again relayed to DHS during the 2005 investigation by the Oklahoma County Sheriff's department;

**EXHIBIT 2**

e. Failing to further investigate and remove the Clark boys after receiving allegations that Rex was using handcuffs on Colton;

f. Failing to properly investigate and remove Sloane from Rex and Becky after the March 28, 2006, referral and the subsequent missing person's report made by Rex and Becky; and

g. Failing to provide any reasonable opportunity to allow the Clark boys an opportunity to convey the gravity of their situation outside the home of Rex and Becky.

72. These breaches by the DHS Employees created an unreasonable risk of substantial, serious and imminent harm to the Clark boys and were the proximate and direct cause of Rex and Becky Clark abusing the Clark boys and killing Colton.

73. In acting (or failing to act) in the manner described in this Petition, the DHS Employees failed to exercise reasonable professional judgment.

74. The risk of Rex and Becky causing harm to the Clark boys was known to DHS Employees.

75. The Clark boys were members of limited and specifically defined groups; namely, children taken into DHS custody, children adopted out of DHS custody, and child victims of abuse.

76. The DHS Employees acted recklessly and with conscious disregard for the obvious and known risk that Rex and Becky posed to the Clark boys and, when viewed in its totality, this conduct shocks the conscience.

77. To the extent Defendants Shadow Mountain BHS, Wallace, and Greene were acting pursuant to their contract with DHS and providing services for adoption of children out of DHS custody, they were acting under color of state law and also violated the same rights of the Clark boys to the extent of their involvement therein.

**EXHIBIT 2**

## COUNT II
## VIOLATION OF OKLAHOMA'S CONSTITUTION

78. DHS, as the state agency responsible for the welfare and safety of children taken into state custody pursuant to a deprived petition under Oklahoma's Children Code, owed a duty to the Clark boys under Article 2, § 7 of Oklahoma's Constitution (due process clause) to take reasonable steps to protect the Clark boys from harm and not to create a danger, nor increase the risk of danger, that may cause harm to the Clark boys.

79. DHS, through the actions and omissions of the DHS Employees and subcontractors as previously described herein, breached this duty owed under Article 2, § 7, and such breach caused the harm to the Clark boys as described herein.

## COUNT III
## NEGLIGENCE

80. DHS, the DHS Employees, Shadow Mountain BHS, Wallace and Greene, in committing the acts described herein, breached their duty to use reasonable care to protect the Clark boys from harm, and breached their duty to use reasonable care to avoid causing unwarranted harm to the Clark boys.

81. The negligence of Defendants caused the harm to the Clark boys as described herein.

82. These Defendants acted with reckless indifference or malice toward the rights of the Clark boys.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

83. The acts or omissions of all Defendants constituted the intentional infliction of severe emotional distress against Plaintiffs.

## REQUESTED RELIEF

## **EXHIBIT 2**

84. Based on the claims and allegations asserted above, Plaintiff requests the following relief:

    a. Compensatory damages as to all Defendants on all claims in an amount to be proven at trial in excess of $1,000,000.00;

    b. Punitive damages as to all Defendants on all claims in an amount to be proven at trial;

    c. An award of Plaintiff's reasonable attorney fees and litigation expenses as may be allowed by law;

    d. Pre and post-judgment interest as may be provided by law;

    e. Any other relief justified by the facts and law.

Respectfully Submitted,

_____
Jason D. Christopher, OBA #17383
Dale Rex, OBA #31199
SWEENEY, DRAPER & CHRISTOPHER
PO Box 190
Ada, Oklahoma 74821
580-332-7200
580-332-7201 – fax
jason@sdcada.net
dale@sdcada.net
*Attorneys for the Plaintiff*

**JURY TRIAL DEMANDED**

**ATTORNEY LIEN CLAIMED**

**EXHIBIT 2**